Dewey, J.
Slander against husband and wife for words spoken by the latter imputing a want of chastity to the plaintiff below, who was an unmarried woman. Plea, not guilty. Verdict for the plaintiff, $1,000, and judgment accordingly. Motion for a new trial overruled.
On the trial, the plaintiff proved, by the deposition of a witness, the speaking of the slanderous words, as laid in the declaration. The witness having established that fact, added, in her examination in chief, that she was not acquainted with the plaintiff at the time the slander was uttered, and that she told the defendant who spoke the words that she (the witness) knew nothing about the matter. She also, afterwards, in her examination in chief, stated that on becoming acquainted with the plaintiff a short time after the defamatory charge was made, she formed ah opinion of her character very different from the impression which the slander had made upon her mind. The defendants offered to prove that the witness had herself, previously to the conversation in which she said she had heard the slanderous words from one of the defendants *made the same charge against the plaintiff contained in those words. The plaintiff objected to the testimony and it was rejected. This is assigned as error.
It is contended that the-evidence was admissible for the purpose of impeaching the witness.
It is a general rule of law, that when the credit of a witness *534 is attempted to be impeached by showing that he had made a previous statement inconsistent with his testimony,he must be first questioned as to whether he made such a statement, in order to give him an opportunity of showing it was made, if made at all, in such a manner and under such circumstances as not to militate against the credibility of bis testimony; then, if the subject-matter of the previous statement be relevant to the issue, and the witness deny having made it, it may be proved for the purpose of impeaching his credit. But if it be in regard to a matter collateral and foreign to the merits of the cause on trial, the witness can not,with propriety, be questioned as to whether he made it, nor contradicted if he deny it. 1 Stark. Ev., pp. 134, 135; 3 Id., 1755; Spencely v. DeWillott, 7 East, 108; Harris v. Tippett, 2 Camp., 637; Rex v. Watson, 2 Stark. R., 116; The Queen’s case, 2 B. & B., 298; Doe d. Sutton v. Reagan, 5 Blackf., 217, and note.
Admitting the statement, which the defendants offered to prove the witness had made in regard to the plaintiff, was relevant to the cause, we do not think a sufficient foundation was laid for the admission of the testimony. No question in reference to the supposed statement was asked the witness, nor does it appear that her attention was in any manner turned to the subject. She had no opportunity to explain the statement if made. We can easily conceive that it was susceptible of such an explanation as to render it compatible with the fairness of her testimony. At least the supposition is very possible ; and she. should, therefore, have had an opportunity of making the attempt. In the Queen's ease before quoted, the question arose whether, when a witness who had been examined in chief on the part of the plaintiff, and who having been asked if he remembered a quarrel between two persons, answered that he did not remember it, but who had not been asked on his cross-examination if he had made a *certain declaration respecting such quarrel, it was competent for the defendant, in order to prove that the witness must remember the quarrel,to introduce testimony that he did make such declaration ? It was decided that it *535 was not competent; and the decision rested expressly .on the ground that the witness had not been questioned as to his previous declaration, and had no opportunity to make such explanation as might have been in his power. This is a strong case, and fully sustains us in the position that the defendants, in failing to question the witness as to any previous statement made by her, failed to lay a sufficient foundation on which to impeach her testimony.
But, in our opinion, the statement of the witness proposed to be proved was entirely collateral to the merits of the cause. The issue was whether one of the defendants had uttered certain slanderous words against the plaintiff. That the witness had uttered the same words could have no bearing upon that question in any point of view. It could not possibly prove that the defendant did or did not speak the words, nor could it affect the consequences of speaking them. The defendants, therefore, would have had no right to contradict the witness even had she been questioned, and had denied making the statement. The evidence was correctly rejected.
■After the defendants had closed their testimony, the plaintiff offered to prove, for the purpose of showing malice, that the same defendant who uttered the slanderous words laid in the declaration, said, after the commencement of the suit, that “ she had reason to suspect the virtue óf the plaintiff, and she would so state in Court.” The defendants objected to the testimony, but it was admitted. This is also urged as error.
It is contended that the evidence was illegal, because the words being actionable might be the foundation of another suit; and because it was too late after the defendants had closed their testimony for the plaintiff to introduce such proof.Actionable words not laid in the declaration, having a reference to the slander complained of, though uttered after the commencement of the suit, may be given in evidence to show the malice of the plaintiff, but not to increase the damages. *McGlemery v. Keller, 3 Blackf., 488; Chubb v. Westley, 6 C. & P., 436; Finnerty v. Tipper, 2 Camp., 72. It is, however, questionable whether, in any *536 case where the malicious intention of the defendant in speaking or publishing the words laid in the declaration is not equivocal the plaintiff may prove other words for the purpose of showing malice; there is the authority of Lord Ellenbor-ough, on one occasion, that he can not. Stuart v. Lovell, 2 Stark. R., 93. As the record in this cause does not contain all the evidence which was given, there is nothing to show that, at the close of the defendant’s testimony, it was not doubtful with what intention the defendant spoke the words complained of; we can not,.therefore, admitting the decision in Stuart v. Lovell to be law¡ say that the subsequent's words were not properly admitted to establish the malice of the defendant.
With regard to the objection to this testimony on account of the time at which it was introduced, that was so much a matter of discretion with the Circuit Court under a view of all the circumstances of the case, that we are not authorized to pronounce its admission to be erroneous. 1 Stark. Ev., 150. Besides, if the defendant’s testimony had rendered the intention with which the words laid in the declaration were spoken doubtful, the rebutting evidence of the plaintiff was introduced on the earliest opportunity. He could not, in that case, have adduced it until after the defendants had closed their proof.
It is contended, also, that the Circuit Court erred in refusing a new trial.
The motion for a new trial was founded upon the allegation of newly discovered testimony. Mclntire, one of the defendants, made his affidavit stating that he had been informed during the trial that one of the witnesses, who proved the Slanderous words, had formerly lived at Rookport in Spenoer county in this State,where she bore a very bad character; that she had eloped from her husband, who had procured a divorce from her; that after the divorce ghe had changed her name and lived a wandering life; that she had clandestinely taken from her former husband her daughter, who was the only other witness that swore to the speaking of the slanderous words; that she had also changed her daughter’s name, *537 *and exercised unbounded control over her ; and that he learned these facts too late to make proof of them at the trial. The defendants also produced the affidavit of one Hinds, who had communicated the above information to Mclntire. Hinds deposed that about six months before the date of his affidavit he visited Rochport, where he received from hearsay the information which he had communicated to Mclntire; and he was also informed that the witness was guilty of illicit intercourse with several men.
C. Gushing and S. C. Stevens, for the plaintiffs.
J. Morrison, for the defendant.
We do not think the Circuit Court committed an error in refusing a new trial on these affidavits. To mention no other, there are two fatal objections to their sufficiency. The first is, that they do not show diligence. The deposition of. the witness whose character was sought to be impeached, was taken a year before the trial. The defendants were aware of the important nature of her testimony, yet they took no steps in all that time to inquire into her character. New trials are never granted on the ground of newly discovered evidence, when, by diligence, the desired testimony might have been ready at the trial. Coe v. Givan, 1 Blackf., 367. The other objection is, that the only object of the newly discovered testimony was to impeach the character of a witness. New trials are rarely, if ever, granted for such a purpose. Bunn v. Hoyt, 3 Johns., 255; Shumway v. Fowler, 4 Id., 425; Duryee v. Dennison, 5 Id., 248.
It is also said that the damages are excessive. But we see nothing in the record to convince us that the jury grossly misjudged on that subject.
Per Curiam.—The judgment is affirmed with one per cent. damages and costs.